STATE OF NORTH DAKOTA EX REL. ISAAC P. BAKER v. L. B. HANNA, as Governor of the State of North Dakota, R. F. Flint, as Commissioner of Agriculture and Labor, Thomas Hall, as Secretary of State, Henry J. Linde, as Attorney General, and W. H. Stutsman, as President of the Railroad Commission.

(154 N. W. 704.)

Application for original writ of mandamus against the individual members of the state board of immigration to compel organization of said board and performance by it of its duties under chap. 234, Sess. Laws 1915, creating said board and defining its duties.

The respondents by answer state their willingness to organize and act as a board, provided § 7 of chap. 234, Sess. Laws 1915, is in force. But respondents recite the finding in the office of secretary of state of certain petitions, one set for a referendum of the entire act, and one for referendum of § 7 thereof, the appropriation part of said statute; and that while neither petition taken alone has enough signatures thereon to authorize a referendum vote, yet if both sets should be considered as but one petition and. as sufficient to referend § 7, the appropriation part of said act, then § 7, the appropriation, would be suspended, pending a vote thereon at the next general election; and meanwhile the board, being entirely without funds, it would be useless to organize as well as powerless to act. *Held:*—

**Original writ of mandamus — application for — State Board of Immigration — organization — appropriations — referendum — hearing on — double petitions — must relate to same subject-matter.**

1. To authorize the two petitions to be treated as one, both must deal with the same subject-matter and seek the same object.

**Act — petition to referend — effect of — revocation of — old statute — reinstatement of — two petitions — dissimilar in their objects.**

2. An affirmative vote on the petition to referend the entire act would revoke the repealing section of chap. 234, Sess. Laws 1915, expressly repealing earlier statutes, and thereby reinstate the old statutes making a standing biennial appropriation of $10,000 for immigration purposes and a different board of immigration; while an affirmative vote upon reference of § 7 only of chap. 234 would leave the present board intact but with no appropriation or funds for its use. Hence, the two petitions are entirely dissimilar in objects sought as they are in subject-matter. They are separate petitions, and cannot be treated as one only for the referending of § 7 alone.

**Act — referending — reasons for — two petitions — must seek same result.**

3. That the petitioners to referend the entire act have assigned in their petition as a reason for its reference that it entails "a needless waste of public money" and "is a needless burden of taxation with no benefit to the people of the state" does not authorize it. to be treated as a petition for reference of § 7, the appropriation only, as petitioners for reference of the entire act must be held to have understood the law, and that in effect they petitioned for a reinstatement of the old biennial appropriation for $10,000, while those petitioning for only reference of the appropriation, § 7, desire no appropriation whatever. Under no reasoning can the two classes of petitioners be said to either desire or seek the same result. The two petitions must be held to be conflicting and incompatible, and cannot be consolidated as one petition.

**Petitions — desire of petitioners as expressed — cannot be ignored.**

4. Petitions cannot be combined when to do so will override or ignore the desires of one set of petitioners as expressed in their petition.

**Referendum — effect of — will of people — sets aside — petition strictly construed — court fiat — cannot amend Constitution.**

5. As a referendum sets aside or suspends the will of the people as expressed by legislative act, petitions for a referendum should be required to comply strictly with the mandatory constitutional provisions under which a referendum is authorized. To require less is the equivalent of amending said constitutional provisions by court fiat, as well as to be derelict in enforcing the Constitution itself.

**Referendums — failure of.**

6. Chapter 234 is in full force and effect, and no part thereof has been referred. The referendums attempted of the act and § 7 thereof have both failed.

**Writ issued — costs — public officials — acts justified — judicial determination — public funds — disbursement of.**

7. Writ ordered issued, but no costs will be taxed as the public officials concerned were justified in obtaining a judicial determination of the questions involved before disbursing public funds with any doubt of their right to do so.

Opinion filed October 8, 1915.

*Benton Baker,* for petitioner.

There are two petitions in this matter, calling for referendums of the act in question, and also of a part of such act. They are of the same kind, signed by different electors, and a single petition for certain objects was clearly intended by the signers, and the whole really constitutes but one petition or instrument. Hammett v. Hodges, 104 Ark. 510, 149 S. W. 667; Williamson v. Russey, 73 Ark. 270, 84 S. W. 229; Butler v. Mills, 61 Ark. 477, 33 S. W. 632; McKinney v. Bradford County, 26 Fla. 267, 4 So. 855; Douglass v. Baker County, 23 Fla. 419, 2 So. 776; State ex rel. Stringfellow v. Chouteau County, 42 Mont. 62, 111 Pac. 144; State ex rel. McNary v. Olcott, 62 Or. 277, 125 Pac. 303; Graves v. Rudd, 26 Tex. Civ. App. 554, 65 S. W. 63; Chambers v. Cline, 60 W. Va. 588, 55 S. E. 99.

A single comprehensive organization should be necessary. State ex rel. Halliburton v. Roach, 230 Mo. 408, 139 Am. St. Rep. 639, 130 S. W. 689.

Disregarding whatever ulterior purpose an effectual referendum of the appropriating section might have accomplished, in legal effect the remainder of the act would be valid and of force, though dormant,

perhaps, for lack of funds to put into effect its purpose. State ex rel. Donahey v. Roose, 90 Ohio St. 345, 107 N. E. 760.

The actions and duties of the secretary of state in reference to referendum petitions are purely ministerial. He has no authority to pass upon the validity of such instruments. State ex rel. Cooper v. Blaisdell, 17 N. D. 575, 118 N. W. 225; Throop, Pub. Off. 537; Wyman, Administrative Law, § 39, p. 153; People ex rel. Chatterton v. Secretary of State, 58 Ill. 90; State ex rel. Speer v. Barker, 4 Kan. 379, 96 Am. Dec. 175; State ex rel. Bienvenu v. Wrotnowski, 17 La. Ann. 156; State ex rel. Register of Lands v. Secretary of State, 33 Mo. 293; State ex rel. McNary v. Olcott, 62 Or. 277, 125 Pac. 303; State ex rel. Kemper v. Carter, 257 Mo. 52, 165 S. W. 773; State ex rel. Halliburton v. Roach, 230 Mo. 408, 139 Am. St. Rep. 639, 130 S. W. 689; People ex rel. Rozenkranz v. Carr, 86 N. Y. 512; State ex rel. Drake v. Doyle, 40 Wis. 188, 22 Am. Rep. 692.

He is not a judicial officer. State ex rel. Standard Oil Co. v. Blaisdell, 22 N. D. 86, 132 N. W. 769, Ann. Cas. 1913E, 1089.

*Wm. Lemke* and *Frank O. Hellstrom,* appeared as attorneys for Thomas Hall, Secretary of State, and *Henry J. Linde,* Attorney General, appeared as attorney for himself and members of the board, other than the Secretary of State.

Goss, J. Based upon affidavits of petitioner as a taxpayer, an alternative original writ of mandamus was issued by this court directed to the governor, commissioner of agriculture and labor, secretary of state, attorney general, and president of the State Railroad Commission, to individually and collectively and as the state board of immigration, show cause why they should not meet and organize as said state board of immigration, and why said board should not proceed to perform its duties pursuant to chapter 234 of the Session Laws of 1915. To this writ two separate returns have been filed. To both petitioner demurred.

Respondents by return allege that by the filing of petitions for referendum in the office of the secretary of state, the appropriations made in § 7, of chapter 234 of the Session Laws of 1915, have been suspended and referred to a vote of the people at the next general election as provided by § 25 of article 2 of our state Constitution as amended, and that organization of the board is a useless formality

where the appropriation part of the bill is thus suspended. The board is without funds even to pay expenses of organization if § 7 has been referred. Respondents are willing to act if it has not. All facts are stipulated. Only three questions are raised: (1st) Is the return of the secretary of state, that § 7 of the act has been referred, conclusive upon the court in this proceeding? (2d) Is the action of the secretary of state in filing and canvassing the various referendum petitions discretionary, and if so is the discretion of that official controllable by a mandamus? And, (3d) Do the two kinds of referendum petitions filed authorize a referendum of the appropriation contained in § 7 of the act?

The first two questions may be considered together. It is urged that his return as secretary of state, that this portion of the act has been referred, is as conclusive upon the courts as would be the regular return of a canvassing board upon the results of an election. The fallacy of this argument consists in the erroneous assumption that the secretary of state is required by law to make or file a return or certificate analogous thereto, passing upon the number and sufficiency of the petitioners and whether the petitions work a referendum. No certificate or return whatsoever, is either called for or provided. His duties with reference to this matter are fixed by the Constitution as amended, and amount to no more than determining as a ministerial act the facts of record in his office as sufficient or insufficient upon which to authorize a referendum.

The legislature has not provided for any official canvass by any board of canvassers or any person or official of the petitioners upon petitions for referendum that may be filed with the secretary of state. As none is provided none is contemplated. The petitions speak for themselves. That official must cause the question to be submitted to ballot if the referendum petitions are sufficient under the law. Under constitutional provisions he must ascertain whether the petitions are sufficient in form, and if so whether they are signed by a sufficient percentage of the total electorate of the state to constitute a basis for a referendum vote. The mere counting of the petitioners is not analogous to a canvass of the vote of an election. It is difficult to see wherein any discretion whatsoever is vested in said official. The law declares what the petitions must contain to be valid. Like any other official acting

under the law, he simply obeys the law. That a question of law may arise, as here, upon the sufficiency of the petition, vests no discretion in said official in acting under it. He obeys the law, or he does not, according to whether his construction of the law be right or wrong. But no discretion is involved. State ex rel. McNary v. Olcott, 62 Or. 277, 125 Pac. 303; State ex rel. Halliburton v. Roach, 230 Mo. 408, 139 Am. St. Rep. 639, 130 S. W. 689,—both on the same question arising on referendum petitions. Where no return is to be made and no discretion vested, there can be no defense on these grounds.

The issuance of the writ then turns upon the sufficiency of the petitions for referendum to operate a reference of § 7, sufficiency of which may be inquired into by mandamus. To constitute a petition with enough signers thereto concededly two entirely different petitions must be treated as but a petition for referendum of § 7. The signers of variant petitions must be counted in order to have the constitutional percentage of electors petitioning for the reference of § 7. One set of petitions reads: "We, the undersigned electors of the state of North Dakota, do respectfully petition you that at the next general election there be referred to the people of the state, for approval or rejection by means of a vote taken at the polls, an act of the legislative assembly of the state of North Dakota approved March 9, 1915, being an act entitled, 'An Act Creating a State Board of Immigration, Prescribing Its Powers and Duties, Making an Appropriation therefor and Repealing, §§ 573, 577 and 578 of the Compiled Laws of the State of North Dakota for the Year 1913.'"

"We object to this act, as it means a needless waste of public money amounting to $60,000, and a needless burden of taxation, with no benefit to the people of the state." To this petition to refer the entire act was 3,533 purported signatures.

The other petition reads: "We, the undersigned legal voters of the state of North Dakota, respectfully order that that portion of senate bill No. 194, entitled, 'An Act Creating a State Board of Immigration Prescribing Its Powers and Duties, Making an Appropriation therefor, and Repealing §§ 573–578 of the Compiled Laws of North Dakota for the Year 1913,' contained in § 7, and which reads as follows: 'Section 7. There is hereby appropriated out of any moneys in the state treasury not otherwise appropriated, or as much thereof as may be

necessary to carry out the purpose of this act, the sum of $25,000 for the year 1915, and the sum of $35,000 for the year 1916'; passed by the fourteenth legislative assembly of the state of North Dakota, shall be referred to the people of this state for their approval or rejection at the next regular election."

To this petition to refer only § 7 of the act, there were attached 4,722 purported signatures. It is stipulated that at the regular state-wide election in the year 1914 there were cast 82,280 votes, and that 10 per cent thereof, or 8,228 petitioners, must have petitioned for referendum before an act can be said to be referred. Neither petition alone has sufficient signers. The total to the two petitions is 8,255. Can these two petitions for referendum, one of the entire act, and the other of but the appropriation part of it, be consolidated and considered as one petition for a referendum of the appropriation? To be so treated, both must deal with the same subject-matter and seek the same object. State ex rel. Halliburton v. Roach, 230 Mo. 408, 139 Am. St. Rep. 639, 130 S. W. 689; Hammett v. Hodges, 104 Ark. 510, 149 S. W. 667. In the Arkansas case it is said that it is necessary that the several petitions to constitute one petition must "contain the same subject-matter, because in no other way could it be positively determined that the number necessary to propose a measure under the initiative had all petitioned for the same measure." Logically, the next inquiry then is whether these two forms of petitions cover identical subject-matter. Manifestly they do not. One is for a referendum of the entire act; the other, for only one of several provisions of it. The former would suspend and possibly repeal the act, abolish the law creating the state board of immigration, as well as to revoke § 7 thereof, the appropriation. Nor is that all by any means that the petitioners for referendum of the act have petitioned for and would accomplish. Annulling the act would abrogate § 8 thereof, the portion wherein other statutes are expressly repealed. That would operate to reinstate those repealed statutes, §§ 573–578, inclusive, Comp. Laws 1913. Thereby would be reinstated a board of immigration of entirely different official personnel and mem- . bership. Nor is that all. Abrogation of the repealing clause would revive the former annual continuing appropriation for immigration purposes of $5,000, provided by § 577, Comp. Laws 1913, expressly repealed by the act sought to be referred. Hence, the petitioners for

the repeal of the entire act have, among other things, so expressed themselves as desiring a biennial appropriation of $10,000 for immigration purposes. And this, too, notwithstanding their objection to the biennial appropriation of $60,000, provided in § 7 of the act, and which appropriation they term "a needless burden of taxation with no benefit to the people of the state." These petitioners must be taken as desiring the abolition of the board of immigration provided for by the later law, also a reinstatement of the old law, and with it the old board of immigration, together with an appropriation of $10,000 for this biennial period for the use of said old board. In legal effect, such is what they have petitioned for, and that will be the result of an affirmative vote upon the referendum they seek by their petition. But the petitioners for a referendum of § 7, the appropriation part only, of the statute in question, seek nothing of the kind. An affirmative vote upon their petition would bear entirely different results as its fruit. Instead, the present board instead of the old board of immigration would exist, or rather the law would exist for its formation, but with no appropriation whatever for its use. It would exist as a board, but be entirely without funds, leaving the sinews of war for succeeding legislatures to provide, subject to possible future referendum upon any appropriation so provided. One set of petitioners, then, would have a biennial appropriation of $10,000 available, the other would have no appropriation; the first set would have an immigration board made up of the governor, secretary of state, state auditor, state treasurer, and attorney general, with the commissioner of agriculture and labor as the general executive agent of said board. The other petitioners would have a board composed of the governor, secretary of state, attorney general, commissioner of agriculture and labor, and president of the State Railroad Commission. One set of petitioners would have the old board and with funds to act; the other the new and different board, but without funds and powerless to act because thereof. To each petitioner knowledge of the law must be presumed. It must be assumed that every petitioner understood fully that for which he petitioned, and contemplated the result that might be brought about by it. Indeed the results achievable must be taken as the object sought by each respective petitioner. Analysis of results proves conclusively that these two classes of petitioners have not in any respect the same purposes in view, nor

31 N. D.—37.

have they petitioned for the same thing, but instead have petitioned concerning wholly different subject-matter.

Respondent's contention is urged upon the theory that the greater includes the less, and that because a referendum of the entire act will necessarily refer the included part, the appropriation, the petition therefor must be held as equivalent to one for the repeal of the appropriation. But respondent's reasoning is faulty. Petitioners for reference of the entire act desire more than do those for but the appropriation part of it. Respondent's theory would ignore the result as well as the real intent of the petitioners to refer the act. Every petitioner to referend the appropriation might in reason have refused to sign the petition to refer the act, preferring the present board, but without funds, to the old board with funds. And the same is true of those seeking a reference of the act itself. As reasonable men, each petitioner might have refused to join in a petition to refer the appropriation, desiring either the old board with funds or the present board with the larger appropriation. To hold that these two petitions, widely divergent in subject-matter and object sought, can be consolidated as a petition for and work a referendum of § 7, would be to violate the expressed intent of all those petitioning for a referendum of the entire act, inasmuch as it would be holding them petitioners for something not only not asked for or sought, but plainly contrary to their desires.

Mention should be made, also, that constitutional provisions are being dealt with. These are plainly expressed in the fundamental law. It is so plain that he who runs may read. Those who would seek to set aside a legislative act, the work of a co-ordinate branch of government, and in whom is reposed and to whom is delegated the exercise of law making as both the arm and the voice of the sovereign state, should be required to come within the plain, as well as mandatory, constitutional provisions. They should be held to petition to suspend only what they have plainly sought to refer. There can be no enlargement of these written petitions by strained construction or mere inference or consolidation of it with others different in subject-matter, scope, and effect. This is but to enforce the basic law, the Constitution itself. To require less is to amend it by implication or be derelict in enforcing its provisions.

Respondents have shown no valid reason why the writ should not

issue directing them to meet as a board of immigration, as provided by chapter 234 of the Session Laws of 1915, and organize as such board, and thereafter proceed to perform the duties therein declared. Neither the act, nor § 7 thereof, has been referred, and chapter 234 aforesaid is in all its parts in full force and effect, including an appropriation of $25,000 for the year 1915 and one of $35,000 for the year 1916 as provided by § 7 thereof.

This is a test case and costs will not be allowed. As the matters herein passed upon were necessary of determination that the existence of the board and its power to act be first determined, none of the respondents have acted capriciously or without cause, but, on the contrary, were fully justified in refusing to expend the state's funds until a final decision should be obtained upon these questions.

Let judgment be entered accordingly.