STATE EX REL. GEO. E. WALLACE, Plaintiff, v. CARL E. KOSITZKY, as State Auditor of North Dakota, Defendant.

(175 N. W. 207.)

**States — auditor not authorized to transfer moneys from general fund to separate fund.**

1. Where the legislature has appropriated $25,000, or so much thereof as may be necessary to indemnify the owners of animals afflicted with the disease known as glanders and dourine, for a period from June 30, 1919, to July 1, 1921, the state auditor is not authorized to set aside and transfer from the general fund of the state, into a separate and distinct fund, cash moneys amounting to $15,000 as a part of such appropriation, so as to thereby deprive the state of cash moneys necessary to meet current obligations.

**Mandamus — state auditor compelled to issue salary warrant of tax commissioner.**

2. In an original application for a writ of mandamus to compel the state auditor to issue the salary warrant of the tax commissioner, where it appears that the state auditor, without warrant of law, has transferred from the general fund into a specific fund, known as the Glander and Dourine Horse Fund, cash moneys in the sum of $15,000, of which amount there remains therein over $13,000 unexpended, and where it further appears that such amount so unexpended, together with the balance remaining in the general fund, is sufficient for the payment of the salary warrant of such tax commissioner, it is *held* that a peremptory writ of mandamus will be awarded.

**Mandamus — issuance of salary warrant of tax commissioner by state auditor against general fund.**

3. Where it appears from the return of the state auditor that there are claims filed in the state auditor's office, payable out of the general fund, prior in point of time to the claim of the tax commissioner for his salary warrant, but where no contention is made that any of such prior claims should first be paid, and no attempt is made to prove or establish the priority of any of

such claims for purposes of refusing the writ, no issue is presented to this court for consideration upon the priority of such claims, and the writ of mandamus will issue if there are moneys in the general fund with which to make payment of the salary warrant demanded.

Opinion filed September 29, 1919.

Original application for a peremptory writ of mandamus to compel the State Auditor to issue the monthly salary warrant of the Tax Commissioner.

Writ awarded.

*Geo. E. Wallace,* pro se for petitioner.

*Theo Koffel,* for respondent.

BRONSON, J.   This is an original application in this court for a peremptory writ of mandamus to compel the state auditor to issue his warrant for the salary of the tax commissioner for the month of August, 1919.   On the issues framed, upon the petition and the return, there is no dispute that the tax commissioner is entitled to a warrant for his salary for the month of August, for which he made demand therefor, if there are sufficient moneys in the general fund of the state with which to pay the same, and if, further, prior claims filed and audited against the state should not first be paid by the state auditor.   In the return the state auditor denies that he has refused to draw such salary warrant, and specifically alleges that on September 5, 1919, he informed the tax commissioner that there was not sufficient money in the treasury to pay his salary, but he thought he would be able to pay him the following day, and that said commissioner thereupon said, "all right" and departed.   However, such salary warrant has not been issued.   He further returns that on September 1, 1919, there was a balance in the general fund of the state of about $14.27, and that on the close of business on September 5, 1919, there was $22.61 in such general fund.   That at such time there were claims amounting in the aggregate to over $251,000, filed and unpaid against such general fund prior to the claim of the tax commissioner.   The return, however, does not affirmatively allege either the duty or the intention of the state auditor to pay such claims or any part of them

out of the moneys that are or may become available in the general fund prior to the payment of the claim of the tax commissioner for his salary. On the other hand, in the oral argument before the court, the state auditor admitted and stated that many of the salaries due the various departments of the state government on September 1, 1919, had been paid, even though such alleged prior claims, as to a large portion thereof, had been filed and audited by the state auditing board prior to that time. The contention of the state auditor, therefore, is that on September 5, 1919, there were not moneys in the general fund sufficient to authorize him, under the law, to draw such salary warrant for the tax commissioner. In the evidence submitted before this court upon the hearing, it appears that on July 30, 1919, $15,000 was transferred by the state auditor from the so-termed general fund to the Glanders and Dourine Horse Fund, and that on the date of this hearing there remained a balance in such Glanders and Dourine Horse Fund of $13,023.93. The deputy state treasurer, by affidavit, states that on September 5, 1919, and at the date of the hearing, there was $36,547.11 in the general fund according to the records of the state treasurer's office. That this fund, as well as other funds, in the office are balanced and reconciled monthly with the records in the office of the state auditor. That furthermore, if the tax commissioner had presented such salary warrant on September 5, 1919, the same would have been paid by the state treasurer. To what extent the state auditor may have issued warrants which were not presented for payment to the state treasurer, or concerning which the state treasurer did not have notice, this court is not advised. It is apparent, however, that, if the transfer made by the state auditor to the Glanders and Dourine Horse Fund from the general fund was not legally authorized, there was at the time of the demand and at date of the hearing, sufficient moneys in the general fund with which to pay such salary warrant. In view of our determination of this question, the matter of ascertaining the real balance in the general fund does not require our consideration.

The state auditor maintains that it is his right and duty to maintain a separate fund designated as the Glanders and Dourine Horse Fund apart from the general fund, into which he may transfer the

amount, or a portion of the amount, appropriated for the purpose of such fund by the legislature.

Under Comp. Laws 1913, § 2736, it was provided that a levy of an annual tax of 1/10 of 1 mill on the dollar should be assessed, and, when collected, should be paid into a fund known as the Glandered Horse Fund, which should be preserved inviolate for the payment of claims allowed for the destruction of glandered horses. In 1915, said § 2736 was repealed. Laws 1915, chap. 216. Likewise in 1915, an act was passed providing for the appraisement of animals and indemnification to owners for animals destroyed by dourine, and further providing that all moneys now in, and hereafter deposited in the Glandered Horse Fund, shall be placed in the Glanders and Dourine Horse Fund, and that the same shall be preserved inviolate for the payment of claims for indemnity allowed for animals destroyed for either glanders or dourine. Laws 1915, chap. 164. At the same legislative assembly there was appropriated $10,000 for such fund. Laws 1915, chap. 29. Again, in 1917 there was appropriated $30,000, or so much thereof as may be necessary, to indemnify the owners of animals afflicted with the disease known as glanders and dourine. Laws 1917, chap. 25. Again, in 1919, there was appropriated by the legislature $25,000, or so much thereof as may be necessary to indemnify the owners of animals afflicted with the disease known as glanders and dourine for the period from June 30, 1919, to July 1, 1921. Senate Bill No. 105, Laws 1919. Pursuant to this appropriation the state auditor makes his return that he has so transferred $15,000, and that there still remains $10,000 to transfer to such fund. Although, as heretofore stated, there is a fund known as the Glanders and Dourine Horse Fund which pursuant to Laws 1915, chap. 164, shall be preserved inviolate as to moneys then in or thereafter deposited therein for the payment of claims of indemnity allowed for animals destroyed, nevertheless it is apparent that the appropriation in 1919 by the legislative assembly gave no direction to the state auditor or any other official to transfer the total amount, or any amount of such appropriation to a special fund; furthermore, under the act of the legislature of 1919, the amount to be used is for a period of time from June 30, 1919, to July 1, 1921. This specifically negatives any legislative in-

tent to have such appropriation transferred to a fund where it would be compelled to remain, whether or not there were any demands for indemnification thereupon. Under the old law, when a specific levy was made upon the assessed valuation for purposes of this fund, there existed a specific reason and a specific requirement for placing the moneys received from time to time as collected from taxation into a specific fund. However, when subsequently the legislature saw fit to make an appropriation biennially for purposes of indemnification, instead of a specific levy as theretofore, there then existed no more reason for transferring such appropriation into a separate and specific fund then there exists for so transferring any other appropriation made by the legislature for any department or purpose of the state government; this is further particularly so where the legislature has not directed such appropriation to be specifically covered into such separate fund. It is true that under the law the state auditor is the general superintendent of the fiscal affairs of the state. Comp. Laws 1913, § 132. It is true, also, that he is required to keep a separate account of the several appropriations made by the legislative assembly. Comp. Laws 1913, § 644. This, however, does not mean that the state auditor is authorized to segregate moneys of the general fund into various subfunds which could only serve to operate to the embarrassment of the state in its financial administration. It is a simple matter of arithmetic to understand where, under the budget system the expenses and disbursements of the state government are made by appropriation of the legislature for a biennial fiscal period in contemplation of taxes and other revenues to accrue or be collected during such period, necessarily, in the operation of the financial administration of the state on the cash basis, sufficient moneys never are immediately available to meet all of such appropriations made by the legislature unless and until such taxes and revenues are in fact collected. It therefore requires a financial discretion to be exercised by the state officials who administer the fiscal affairs of the state, so that the appropriations and expenses of the government may be disbursed during such fiscal period in accordance with the cash revenues received, so that the functions of government be accomplished and the legislative intent through appropriation be attained. This is readily understood

when a simple consideration of the financial legislation of this state clearly demonstrated that the state, in the operation of its financial system, has provided no means or method for building up or creating a cash reserve for purposes of meeting its general financial obligations in anticipation of taxes and other revenues to be collected.

We are clearly of the opinion, therefore, that the unexpended balance in the Glanders and Dourine Horse Fund is still a part and portion of the general funds of the state. The question whether the compulsory issuance of the salary warrant should be enforced as against outstanding prior claims, filed and unpaid by the state auditor, is not at issue before this court.

The state auditor has filed no brief. Upon the oral argument of this cause, upon a question propounded directly by the court, the state auditor stated that he did not refuse to issue this salary warrant upon the ground of prior outstanding claims, and that the warrant would have been issued if there were sufficient moneys in the general fund to cover the same. There is accordingly no contention made or proof submitted that any one of the so-termed prior claims should first be paid, or that the state auditor has made payment of various claims which in fact are subordinate to the claim for salary of the tax commissioner as a departmental officer. The controversy, accordingly, before this court is therefore upon the question whether, upon the date of the demand for the salary warrant, there were moneys in the general fund with which to make payment of the same. Clearly, therefore, it was the duty of the state auditor to issue such salary warrant to the tax commissioner unless he otherwise showed to this court the legal necessity of appropriating such moneys then in the general fund to the payment of other outstanding claims. He cannot thus evasively raise a collateral issue of law and fact unless he shows his intention to issue warrants for claims prior to the salary warrant herein to the extent of moneys in the general fund, and we do not understand that the state auditor so intends to do. Pierce, B. & P. Mfg. Co. v. Bleckwenn, 42 N. Y. S. R. 568, 16 N. Y. Supp. 768. See Spelling, Extr. Relief, § 1489. Upon the presentation of this case it is the apparent desire of both parties to determine the status of the general fund with reference to the sufficiency of moneys therein with which to pay such

salary warrant. Accordingly, upon the record presented, we are satisfied that there is no issue presented concerning the priority of other outstanding claims. It therefore follows that the writ as demanded by the tax commissioner should issue. It is so ordered.

GRACE and BIRDZELL, JJ., concur.

CHRISTIANSON, Ch. J. (concurring in part and dissenting in part). While certain language in Laws 1915, chap. 164, furnishes some foundation for a contrary view, I am of the opinion that, under the existing laws, moneys appropriated for the payment of glanders and dourine claims do not in fact go into and become a separate fund; but properly belong in the general fund, and that glanders and dourine claims are properly chargeable against such fund. I therefore agree with the opinion prepared by Mr. Justice Bronson that, under the showing made in this case, there was available on September 5, 1919, in the general fund the sum of $13,023.93, which had been erroneously transferred to the so-called Glanders and Dourine Horse Fund. I do not, however, agree that this fact alone warrants the issuance of a writ of mandamus to compel the defendant to issue a warrant to the relator.

The statute provides: "It is the duty of the state auditor: . . . 17. To draw warrants on the state treasurer for the payment of money directed by law to be paid out of the treasury; which warrants shall be numbered consecutively in the order in which they are drawn; but no warrants shall be drawn unless authorized by law, nor unless there are funds in the treasury applicable to the payment thereof to meet the same." Comp. Laws 1913, § 132, subd. 17.

The return or answer of the defendant, state auditor, is accompanied by a detailed itemized list of unpaid claims chargeable against the general fund. The correctness of such list is not denied. It appears therefrom that there are outstanding unpaid claims chargeable against the general fund, aggregating $7,624.31, which were presented for payment prior to, and duly allowed by the state auditing board on, August 5, 1919; that there are outstanding unpaid claims, chargeable against said general fund, aggregating $108,794.93, which were presented for payment prior to, and allowed by the state auditing

board on, August 28, 1919; that there are claims for salaries of state officers and employees chargeable against the general fund aggregating $14,721.36, which were presented for payment and allowed by the state auditing board on August 28, 1919, among which is the claim of the relator; that there are unpaid claims in favor of the different state institutions chargeable against the general fund, aggregating $17,940.-01, presented for payment and allowed by the state auditing board on August 28, 1919. These different claims amount in all to $172,875.64. It also appears that there are unpaid claims chargeable against the general fund aggregating $23,876.06, which were presented for payment prior to July 1, 1919, but are held in abeyance on account of inadequate subvouchers, mileage reports, etc. It further appears that claims aggregating $78,464.64, chargeable to the general fund, were presented for payment prior to September 5, 1919, but have not been acted upon by the state auditing board. From the defendant's answer it appears that on September 5, 1919, there was a balance in the general fund of $22.61. If to this is added the $13,023.93, erroneously transferred to and remaining in the so-called Glanders and Dourine Horse Fund, there will be $13,046.54 in the general fund. And as already stated, it is undisputed that there are outstanding unpaid claims properly chargeable against the general fund, aggregating $172,875.67, which had been presented for payment and allowed on or prior to August 28, 1919. An examination of the list indicates that a great, if not the greater, portion of such claims are of equal rank with that of the relator. And the relator has neither made nor attempted to make any showing whatever that his claim is entitled to priority over any of the other claims. Under the circumstances I do not believe that the relator has shown that he is entitled to a writ of mandamus to compel the defendant to issue the warrant. The majority opinion is based upon the theory that this question is not presented. It is said: "The question whether the compulsory issuance of the salary warrant should be enforced as against outstanding prior claims, filed and unpaid by the state auditor, is not an issue before this court." The state auditor, in his contentions before this court, has not refused to issue such salary warrant for such reason. I do not agree with this reasoning. The writ of mandamus may be issued by this court

to compel the state auditor to issue a warrant only when the issuance thereof is "an act which the law especially enjoins as a duty" upon the state auditor.  Comp. Laws 1913, § 8457.  To entitle a relator to such writ he must show that he has a clear and complete legal right to have the particular act performed.  Bailey v. Lawrence County, 2 S. D. 533–537, 51 N. W. 331; 26 Cyc. 151.

ROBINSON, J., concurs.