[File No. 6618.]

THE STATE OF NORTH DAKOTA EX REL. NELSON A. MASON, Relator, v. BERTA E. BAKER, as State Auditor of the State of North Dakota, and John R. Omland, as State Treasurer of the State of North Dakota, Respondents.

(288 N. W. 202.)

Opinion filed October 25, 1939.

490

*S. E. Ellsworth,* for relator.

*Alvin C. Strutz,* Attorney General, and *George F. Shafer,* Special Assistant Attorney General, for respondents.

*L. J. Wehe,* amicus curiæ.

MILLER, Dist. J.   This is an original proceeding in the supreme court on the relation of Nelson A. Mason, praying for a writ of injunc-

tion restraining the state auditor and state treasurer from disbursing any of the $35,000 appropriation provided for in the Recodification Act, chapter 110 of the 1939 Session Laws. The petition sets forth the petitioner's interest in the matter, the public nature and importance thereof, the consent of the attorney general to this proceeding, the enactment of said chapter 110, the intention of respondents to proceed thereunder, that such act is unconstitutional and void in that it imposes upon the supreme court duties other than judicial and confers upon the judges thereof powers of appointment in violation of § 96 of the state Constitution.

To this petition, respondents interpose a demurrer and motion to dismiss.

No objection is made to the method of proceeding, and the court deems the matter of sufficient importance to warrant its assuming original jurisdiction. State ex rel. Lofthus v. Langer, 46 N. D. 462, 177 N. W. 408; State ex rel. Wallace v. Kositzky, 44 N. D. 291, 175 N. W. 207.

The law in question provides that the supreme court is authorized and directed to select and employ not more than three persons, resident of the state and learned in the law, to be known as the Code Revision Commission; that such Commission, acting under the supervision of the supreme court, shall continue to date the annotations of the Constitution, prepare, annotate and index a complete set of rules of practice and procedure for all courts of the state, including rules and regulations for admission to and disbarment from practice of law; to revise, annotate and index the laws of the state; that the proposed code shall become effective when enacted by the legislature, and such rules and regulations for admission to and disbarment from practice shall become effective when promulgated by the supreme court; that if the proposed Revision Code is enacted by the legislature, such Commission shall continue until the code is printed and bound, and in that connection shall advertise for bids, specify the type of printing and binding and let a contract therefor when approved by the Chief Justice; the supreme court shall have control over the making of all contracts, disbursement of all moneys appropriated, and may discharge any commissioner or employee and fill any vacancy.

The section of the Constitution claimed to be violated is number 96:

"No duties shall be imposed by law upon the supreme court or any of the judges thereof, except such as are judicial, nor shall any of the judges thereof exercise any power of appointment, except as herein provided."

In this state, as in all other states of the Union, the essential functions of government are divided among three departments, the legislative, executive, and judicial. This court has early held that these grants were in their nature exclusive and that neither department could exercise any of the functions of the other. State ex rel. Standish v. Boucher, 3 N. D. 389, 56 N. W. 142; 21 L.R.A. 539. Section 96 also provides that only judicial duties may be exercised by the supreme court, but such provision does not alter the general principle embraced in the maxim "Separation of the powers of government."

It is therefore necessary to consult authorities for the principles to be applied in determining whether the duties conferred upon the supreme court by the Recodification Act are not judicial.

"Judicial power determines what the law is, and what the rights of the parties are with reference to transactions already had, and whenever an act undertakes to determine a question of right or obligation or property, as the foundation upon which it proceeds, such act is to that extent a judicial one." State ex rel. Miller v. Taylor, 27 N. D. at p. 87, 145 N. W. 425.

" 'On general principles, those inquiries, deliberations, orders and decrees which are peculiar to such a department must in their nature be judicial acts.' . . . The judicial department of government is that department which it was intended should interpret and administer the laws. . . . Judicial power is authority vested in some court, officer, or person to hear and determine when the rights of person or property, or the propriety of doing an act are the subject matter of adjudication. . . . Official action, the result of judgment or discretion, in such case is a judicial act." State ex rel. Standard Oil Co. v. Blaisdell, 22 N. D. 86, at p. 95, 132 N. W. 769, Ann. Cas. 1916E, 1089.

"The distinction between legislative or ministerial functions and judicial functions is difficult to point out. What is a judicial function does not depend solely on the mental operation by which it is performed or the importance of the act. . . . As to what is judicial

and what is not seems to be better indicated by the nature of a thing than its definition." 6 R. C. L. p. 159.

"Indeed, there is not a single Constitution of any state in the Union which does not practically embrace some acknowledgment of the maxim (Separation of the powers of government to be administered by the three arms of government separately) and at the same time some admixture of powers constituting an exception to it." See, Re Minneapolis, St. P. & S. Ste. M. R. Co. 30 N. D. 221, at p. 226, 152 N. W. 513, P.U.R.1915D 434, Ann. Cas. 1917B, 1205.

"Notwithstanding the general rule, however, the legislature may clothe judges with powers which are not by their nature either exclusively judicial or nonjudicial, and also with such minor executive and ministerial functions as may be necessary to the proper operation of the system of government established by the Constitution." 33 C. J. 960; 12 C. J. 874 (376).

"All powers, however, even though not judicial in their nature, which are incident to the discharge by the courts of their judicial functions are inherent in the courts, and the exercise of such powers by the courts is not forbidden by constitutional provision for the division of the powers of government among the several departments." 12 C. J. 873.

Our laws were compiled in 1913, and in 1925 a Supplement covering subsequent legislation was provided. Since then, separate volumes for each session of the legislature have been published, a total of seven; besides pamphlets covering special sessions. During that period there has been much new legislation and many amendments, many of which contain a general repeal clause. The result is that no one can be sure that he has seen all the laws on a given subject or knows just what laws are in force. It is of the utmost importance, not only to the bar and the public generally, but to the courts, that the Constitution and all the laws of the state be continued to date, annotated, revised and indexed.

The sole purpose of the Recodification Act is to make easily available for the courts and for the attorneys (who are officers of the courts) all constitutional provisions, statutes and judicial decisions. Under present conditions, with an ever increasing volume of legislation and decisions, the courts would be unable to function without systematic arrangement of the laws and adequate digests and annotations. It is therefore competent for the legislature to authorize the supreme court

to exercise such functions as are necessarily connected with the performance of its judicial duties, although such acts may be of a ministerial or executive nature.

In Re Revisor of Statutes, 141 Wis. 592, 124 N. W. 670, 18 Ann. Cas. 1176, involving a similar question, the Wisconsin court said: ". . . where the officer or employe is to act in an administrative way as an aid, even though indirectly, to the court in the performance of its functions, his appointment may rightly be delegated to a court or judge, and such delegation is not an invasion of executive power, nor is the fixing of his salary in advance an invasion of legislative power, nor does the judge who makes the appointment thereby attempt to hold another office."

This act, chap. 110, § 4, 1939 Session Laws, provides: ". . . The proposed code . . . shall become effective when enacted by the legislature; and such rules and regulations for admission to and disbarment from the practice of law shall be effective when promulgated by the supreme court."

Clearly the legislature did not intend to vest any of its powers in the judiciary, for it expressly reserved the power of enactment, and it is significant, too, that it left with the supreme court the right to adopt rules of practice and regulations for admission to and disbarment from the practice of law, powers which are generally recognized as being inherently in the courts. 7 R. C. L. p. 1023. See note in 110 A.L.R. 41. Under this act it is not the function or duty of the Code Commission to make or change any existing law.

Our Constitution is not to be construed as rigidly classifying all the functions of government as being either legislative, executive or judicial.

In fact this court under legislative authority, but technically contrary to § 96 of the Constitution, for long periods of time has made appointments, helpful and necessary in the performance of its judicial duties.

Thus the supreme court has for sixteen years appointed the officers of the State Board of Bar Examiners and has regulated and controlled the performance of their duties, notwithstanding the Constitution makes no provision for such appointments. 1925 Supp. § 782.

Section 783 requires that an oath be taken by such officers and fixes the term of their appointment for six years.

Section 784 provides that said Bar Board shall hold public examinations for admission to the bar.

Section 785 requires that the Bar Board shall report the result of all examinations to the supreme court with such recommendations for admission as to the Board shall seem just, and the supreme court shall, after considering the report and recommendations, make its order authorizing the issuance of certificates of admission to the bar.

Section 787 provides for the compensation of the Bar Board members and that they shall have power to employ assistants, purchase supplies, etc.

Section 789 vests the supreme court with the power to admit persons to practice as attorneys at law.

Section 808 provides that disbarment complaints filed with the supreme court shall be referred to the Bar Board, with directions to investigate the charges, and empowers the Board to issue subpœnas, administer oaths and take testimony.

Section 809 requires that the Board file with the court a report as to the truth and validity of the charges investigated, with recommendations.

Section 810 directs that, upon order of the supreme court, the Bar Board shall prosecute the disbarment charges, and authorizes the Board to employ attorneys to conduct the prosecution.

All of the foregoing duties may be classified as ministerial in nature, although judicial in purpose.

In 41 N. D. 692, at pages 700 to 702, are rules of practice of the supreme court, numbers 30 to 36, governing and affecting admission to the bar and disbarment. In enacting such rules this court was engaging in a practice which was legislative in nature, form and character, although judicial in purpose.

If the strict construction contended for by the relator is placed upon the limitations of power contained in § 96, then it would appear that the foregoing statutes relating to the State Bar Board are unconstitutional. While the exercise of these powers by this court does not validate such statutes, nevertheless the exercise of the powers which these statutes purport to confer upon this court constitutes a judicial

practice, long followed by the court, which should be taken into consideration in determining a construction to be given to the limitations contained in the second clause of § 96.

"Every reasonable presumption is in favor of the constitutionality of a statute enacted by the legislature. . . . This presumption is conclusive, unless it is clearly shown that the enactment is prohibited by the Constitution of the state or of the United States. . . . It is presumed that the legislature intended to enact a valid law, and therefore, when a statute is susceptible of two constructions, one of which will render it valid and another which will render it unconstitutional and void, the former construction will be adopted. . . . The only test of the validity of an act regularly passed by the state legislature is whether it 'violates any of the express or implied restrictions of the state or Federal Constitutions.'" State ex rel. Linde v. Taylor, 33 N. D. 76, 156 N. W. 561, L.R.A.1918B, 156, Ann. Cas. 1918A, 583; State ex rel. Patterson v. Bates, 96 Minn. 110, 104 N. W. 711, 113 Am. St. Rep. 612.

The unconstitutionality of this act is further urged on the ground that it grants to the judges of the supreme court power of appointment in violation of § 96. Such judges, however, under § 93 of the Constitution do have power to appoint a clerk and a reporter, whose positions are described as being "offices."

Under the Recodification Act the supreme court is directed to "select and employ" the members of the Commission. Furthermore, the Commission acts under the supervision and direction of the supreme court; such court determines the compensation of the members of the Commission, and it may discharge them at will. It is true that § 7 of the act requires the members of such Commission to file an oath of office. This fact, however, is not conclusive in determining whether a person is a public officer. "Generally speaking, one of the requisites of an office is that it must be created by a constitutional provision, or it must be authorized by some statute, and an important distinction between the status of an officer and that of an employee rests on the fact that an office is based on some provision of law, and does not arise out of contract, whereas an employment usually arises out of a contract between the government and the employee. And although an employ-

ment may be created by law, where authority is conferred by contract, it is regarded as an employment, and not as a public office, notwithstanding provisions for the employment are made by statute, and notwithstanding the position is referred to as an office." 46 C. J. 930.

Another doctrine that is well-nigh universal is that the duties must be continuous and permanent and not merely transient, occasional or incidental. Re Revisor of Statutes, 141 Wis. 592, 124 N. W. 670, 18 Ann. Cas. 1176, supra. 22 R. C. L. 374 (5).

In the case of Baird v. Lefor, 52 N. D. 155, 201 N. W. 997, 38 A.L.R. 807, this court held a receiver to be an officer of the court and not a civil officer. It was pointed out also that the term of office, compensation and qualification of a receiver are all left to the court. The same conditions exist in this case. There is no provision in the Constitution authorizing courts to *appoint* receivers, but this court held in the Lefor Case that it had inherent powers to appoint receivers to act as agents of the court. "It may be conceded that generally the appointment to office is within the executive function, but there remains the exception that within the duties of both the judicial and legislative branches of the government are certain administrative acts in aid and execution of the judicial and legislative functions which need to be performed by means of assistants and that as either the legislature or the judiciary might, may, must constitutionally perform such acts, they may select those who are to aid them in such performance. . . ." State ex rel. Gubbins v. Anson, 132 Wis. 461, 112 N. W. 475.

Selection and employment by the Supreme Court of members to serve on the Code Revision Commission under chap. 110 of the 1939 Session Laws, do not constitute an appointment prohibited by § 96 of the state Constitution. Such commissioners, when appointed and after taking their oaths of office, become agents or officers of the court.

The Recodification Act further provides that if the proposed Revision Code is enacted by the legislature, then the said Commission shall determine upon a style of printing and binding to be used, shall advertise for bids for printing of the report to be made to the legislature of 1941, and shall let a contract to the lowest and best bidder, all as required by § 9 of said act.

No part of this act requires the Commission to submit to the legis-

lature a printed report of its work or printed and bound volumes of the proposed code and rules. Section 9 does recite that the Commission shall advertise for bids for the printing of such report, but this requirement is negatived by the provision that such advertisement shall be made *when and if* the report, proposed code and rules are adopted.

This § 9 of the act is unconstitutional and void, in that it imposes other than judicial duties upon the supreme court, in violation of § 96 of the Constitution.

When the Code Revision Commission, as agents of this court, has submitted its report and the proposed Revised Code to the legislature for adoption, which it may do without having them printed and bound, it has performed all the duties of a judicial nature imposed upon it under such act, which it may legally do.

If the legislature enacts such proposed code, any act by the Commission thereafter in advertising for bids or letting contracts would clearly, under the foregoing authorities, be nonjudicial acts.

The unconstitutionality of said § 9, however, shall in no manner affect or alter any duties or functions directed or authorized to be done under the remainder of the act prior to the adoption by the legislature of the report of the Commission and the proposed code. Thereafter it is a matter for the attention of the legislature.

For the reasons herein stated relator's application for an injunction must be granted, restraining defendants from approving vouchers or accounts against the said appropriation or issuing any warrants for payment of same, made or drawn thereon for advertising for bids for printing the code, Commissioners' Report to the Legislature and for printing or binding such report, the Code of Laws, either proposed or enacted, and the rules of practice and procedure, as provided for in said § 9, or the doing of any other act by said Code Commission after the adoption of said report and proposed code. The application in other respects should be denied.

GRONNA, Dist. J., concurs.

GRIMSON, Dist. J. (for the majority of the court). Inasmuch as Judges Miller and Gronna hold that portions of chapter 110, Sess. Laws 1939, p. 150, entitled "Recodification Act," are constitutional

and separable from the unconstitutional portion, it is beyond the power of the remaining three members of the court to declare such constitutional provisions void, even though we do not agree with them. Section 89 of the Constitution as amended provides "that in no case shall any legislative enactment or law of the state of North Dakota be declared unconstitutional unless at least four of the judges shall so decide." State ex rel. Sathre v. Board of University & School Lands, 65 N. D. 687, 262 N. W. 60; Daly v. Beery, 45 N. D. 287, 178 N. W. 104; Wilson v. Fargo, 48 N. D. 447, 186 N. W. 263.

We deem it, however, proper to point out why we are of the opinion that the whole of said chapter 110 is unconstitutional.

While the presumption is in favor of the constitutionality of a statute enacted by the legislature, yet it is especially incumbent upon the courts to consider with care and deliberation such laws as attempt to add to the powers and duties of the court and to interpret them in the light of the Constitution with the same strictness as laws concerning the other departments of government. The makers of the Constitution wisely divided the government into three branches, legislative, executive, and judicial, and assigned definite, exclusive duties to each. See §§ 25, 71, 85. Also State ex rel. Standish v. Boucher, 3 N. D. 389, 58 N. W. 142, 21 L.R.A. 539. It is clear they intended to keep the supreme court free from administrative and legislative duties and above all political or personal bickering such as is often involved in making appointments. They emphasized this by enacting § 96: "No duties shall be imposed by law upon the supreme court or any of the judges thereof, except such as are judicial, nor shall any of the judges thereof exercise any power of appointment except as herein provided." This provision is found in the Constitutions of only two other states, Pennsylvania and Wyoming. Then § 21 reads: "The provisions of this Constitution are mandatory and prohibitory unless, by express words, they are declared to be otherwise." That construed with § 96 is a mandate to the legislature not to impose anything but judicial duties on the supreme court, and a prohibition on the court to make any appointments except such as are provided in the Constitution. State ex rel. Young v. Brill, 100 Minn. 499, 111 N. W. 294, 639, 10 Ann. Cas. 425; Kermott v. Bagley, 19 N. D. 345, 124 N. W. 397; Glaspell v. Jamestown, 11 N. D. 86, 88 N. W. 1023.

Provision was made in § 93 for the appointment by the judges of the court of a clerk and a reporter. No other provisions are made in the Constitution for appointments by the supreme court or the judges thereof, excepting the provision in the late initiated constitutional amendment making the chief justice a member of the commission nominating the board of higher education.

It is true that the authorities generally hold that the judiciary, as well as the other departments of government, may employ such assistants as are necessary to carry out the duties of that department. It would be seriously handicapped in carrying out its functions if that were not within its powers. Under that theory, undoubtedly, the appointment of a state law librarian, as provided in § 737a1, 1925 Supplement, and of bailiff, as provided by § 741, Comp. Laws 1913, and of stenographers, as provided by § 717, Comp. Laws 1913, and even the appointment of the state bar board, as provided by § 782, Comp. Laws 1913, have been made by the supreme court. All these are employees of the court and their duties are entirely in furtherance of the functions of the judiciary. Their work is such as the court itself could perform under its constitutional authority, and it is only such work that can be assigned to employees of the court. In fact, such appointments could probably be made under the inherent constitutional powers of the court without legislation.

The practice of the supreme court in the past in making appointments under these sections, however, should not be construed as authority in determining the question here in issue. The validity thereof has never been raised and the above theory supports it. The duties of the commission here proposed are quite different, and as hereinafter shown some of them at least not such as may be performed by the court itself. If a practical construction is to be considered, the fact that the legislatures in the past have always assigned the duty of revision and recodification to other departments than the judiciary is more in point than this practice of the supreme court.

It is undoubtedly true that a revision would be of great benefit not only to the courts, but to the legal profession. However, it would also be of fully as much benefit to both the executive and legislative departments. It does not seem, therefore, to be exclusively in furtherance of the duties of the court nor for that reason judicial.

The primary duty of the court is to interpret the law as bearing upon acts already committed. State ex rel. Miller v. Taylor, 27 N. D. 77, 87, 145 N. W. 425; State ex rel. Standard Oil Co. v. Blaisdell, 22 N. D. 86, 132 N. W. 769, Ann. Cas. 1913E, 1089; Cooley, Constitutional Law, 8th ed. 184. The making of court rules is in furtherance thereof. So the superintendence of the bar is also an aid to the court in carrying out its duties. The writing of the law is entirely beyond that duty and exclusively within the province of the legislature itself. State ex rel. Rusk v. Budge, 14 N. D. 532, 105 N. W. 724. In § 3 of the act here in question it is attempted to assign to a commission selected by the court the duty to revise the laws of the state; to eliminate all statutes repealed or inoperative, or special or limited in nature; to reconcile all inconsistencies, eliminate duplications, restate all confusing language; to harmonize statutory and declaratory law; to revise all laws so as to make a perfect, complete and consistent code of laws. That is a general assignment to restate the law. It is an assignment to do something that is not necessary for the primary performance of the judicial function; namely, the application of the law to concrete facts. That this assignment is not judicial is impliedly admitted in chapter 110 in that the other duties of the commission are required to be performed under the supervision and direction of the supreme court, while no such provision is made in § 3.

The supreme court derives all its powers from the Constitution. 12 C. J. 873. No duties can be assigned to the court that it, under its judicial powers granted by the Constitution, could not perform without specific legislative assignment. The legislature can give no new powers to the supreme court. The test, therefore, is whether the duties imposed by this act are such as the court could perform under its general powers. Application of that test to the duties proposed in this law shows how far afield this legislation goes. Everyone will agree the court cannot legislate. In fact, the most severe criticism on the courts is the charge that they revise the law in some of their interpretations of the statutes. Yet here it is proposed that employees of the court, who as such can only do what the court itself could do, rewrite the whole set of codes.

But it is argued that because § 4 of the act provides that the proposed code shall not become effective until enacted by the legislature,

that indicates there was no intent to vest legislative powers in the judiciary. The final enactment is only one step in the legislative process. The drafting is a prior step usually assigned to a legislative committee but here assigned to this commission. It may be assumed, however, that the proposed codes, with perhaps minor alterations, will be enacted. That is the whole purpose of the legislation. When enacted the resulting codes will be laws written, or at least worded, by this commission even if enacted by the legislature. Granting that this writing of the laws is not required to be under the supervision of the supreme court, yet chapter 110 provides not only that a commission be appointed by the supreme court, but the salary of its members and employees is to be fixed by the court, and the members and employees are subject to be discharged by the court without cause. Its experts and assistants are employed under supervision of the court. It is safe to assume that the commission and its employees will be entirely under the domination of the court. Later, when litigation arises under the provision of the new codes, it would become the duty of the supreme court to pass upon laws actually written by a commission under its domination and control. This seems too much like having the court pass on its own acts. It puts into the hands of the court, not only the interpretation of law, but also the writing thereof. It seems to the majority of the court to be a clear invasion of the principle of separation of the powers of government, and to be prohibited by the Constitution.

If, on the other hand, it be considered that the Recodification Act makes the code revision commission a body with powers in excess of and separate from the judiciary, to which a legislative duty may be assigned, then new officers are created who are not the employees or agents of the supreme court. 46 C. J. 922, Mechem, Public Officers, § 4. In support of that is § 7 which provides for the members of the commission to take an oath of office. In such case it appears to the majority of the court that the provision against appointment by the judges contained in § 96 applies. Furthermore, appointment to office is an executive rather than a judicial function. The Wisconsin case, Re Revisor of Statutes, 141 Wis. 592, 124 N. W. 670, 18 Ann. Cas. 1176, is cited in support of the authority of the court to make such appointment. The Wisconsin Constitution, however, had no provision similar to our § 96, and Judge Winslow's prevailing opinion in that

case sustains such appointment only because "the Constitution does not otherwise direct." As our Constitution does direct that the judges of the supreme court have no power of appointment, the Wisconsin case is not in point.

The respondent contends that as long as some of the duties of the commission, such as the making of court rules, as provided in § 2, are judicial, these other and legislative duties may be assigned to it by the legislature. Minnesota cases are cited to support that. Alexander v. McInnis, 129 Minn. 165, 151 N. W. 899; State ex rel. Jonason v. Crosby, 92 Minn. 176, 99 N. W. 636. The Minnesota Constitution has no provision similar to our § 96 prohibiting the assignment of non-judicial duties to the court. A close examination of these cases, how-ever, shows that this has been done because the legislative and judicial duties in those cases are intermixed, and in the Crosby Case it is said: "Perhaps few, if any, cases are to be found, however, where statutes imposing purely legislative duties and powers upon the courts have been upheld. . . ."

We are agreed that § 9 of the Recodification Act providing for the printing of the report of the commission imposes upon the supreme court administrative duties not connected with the functions of the judiciary and that, therefore, said section is unconstitutional. Judges Miller and Gronna hold, however, that the said section is separable from the rest of the enactment and that the intent of the legislature in passing the Recodification Act is attained even without that section. The majority of the court believe that, in addition to § 9, § 8, giving the court power over the contracts and disbursements provided for in the act, is unconstitutional for the same reason and that the appoint-ment provided by § 1 and the powers authorized by § 3 are also un-constitutional; that when those sections of the law are considered to-gether with § 9 the intention of the legislature in enacting the law is nullified and therefore the whole chapter void. 11 Am. Jur. 834–860, Constitutional Law. The enactment is entitled "Recodification Act." The title provides for a recodification and revision of the laws. It is clear that the main purpose of the act was to secure such revision. When those portions of the law are held unconstitutional, there is not enough left to hold that the intention of the legislature in passing the act is attained.

For the reasons stated above, the majority of the court are of the opinion that chapter 110 of the Session Laws of 1939 is unconstitutional.

SWENSON and JANSONIUS, Dist. JJ., concur.