STATE of North Dakota ex rel. Nicholas J. SPAETH, Attorney General, and ex rel. Richard Kloubec, Speaker of the North Dakota House of Representatives, Petitioners,

v.

Ruth MEIERS, President of the North Dakota Senate; and Rolland W. Redlin, President Pro Tempore of the North Dakota Senate, Respondents.

No. 870053CV.

Supreme Court of North Dakota.

April 1, 1987.

Nicholas J. Spaeth, Atty. Gen. and Laurie Loveland, Asst. Atty. Gen., Office of Atty. Gen., State Capitol, Bismarck, for petitioners; argued by Laurie Loveland.

Kenneth M. Jakes, Sp. Asst. Atty. Gen., Bismarck and Christine A. Hogan, Sp. Asst. Atty. Gen., Bismarck, for respondents; argued by Christine A. Hogan.

John Schneider, State Representative, for Charles Mertens, Minority Leader. amicus curiae.

Wayne Stenehjem, State Senator, for John Olson, Senate Minority Leader. amicus curiae.

LEVINE, Justice.

The petitioners, Nicholas J. Spaeth, Attorney General of the State of North Dako-

ta, and Richard Kloubec, Speaker of the North Dakota House of Representatives (House) request this court to exercise its original jurisdiction and to issue an alternative writ of mandamus requiring the respondents, Ruth Meiers, President of the North Dakota Senate (Senate), and Rolland Redlin, President Pro Tempore of the Senate, "to accept HB No. 1346 from the House of Representatives and submit that bill to the Senate for its consideration." We decline the invitation to exercise our original jurisdiction.

On February 20, 1987, the House approved HB No. 1346 by a majority vote and thereafter Speaker Kloubec signed and transmitted the bill to the Senate for consideration. Senator Redlin, acting in his capacity as President Pro Tempore of the Senate, refused to accept HB No. 1346 on the ground that the bill, which repeals an initiated measure, failed to pass the House by a two-thirds majority vote which Redlin believed was necessary under Art. III, § 8, N.D. Const. Redlin returned the bill to the House without first submitting it for consideration by the Senate. The petitioners then filed this application for an alternative writ of mandamus.

On February 25, 1987, Kloubec requested and received an Attorney General's opinion which concluded:

"... an initiated measure approved by the electors may be amended or repealed by less than a two-thirds vote of the Legislative Assembly where the Legislature's amendment or repeal is enacted less than seven years after the initiated measure's effective date but becomes effective after that seven-year period has passed." N.D. Attorney General's Opinion 87–5.

After receiving the Attorney General's opinion, Kloubec transmitted HB No. 1346 and a copy of the opinion to the Senate. Senator Redlin again refused to accept HB

No. 1346 and ordered the bill returned to the House. Senator John Olson subsequently moved to appeal the President Pro Tempore's decision; however, Senator Richard Maixner moved to table the motion to appeal, and the motion to table carried. 1987 S.J. pp. 1115–1116.

■ This court's authority to exercise original jurisdiction under Art. VI, § 2, N.D. Const., is a discretionary authority which cannot be invoked as a matter of right. *State ex rel. Link v. Olson*, 286 N.W.2d 262 (N.D.1979). This court will determine for itself whether or not to exercise its original jurisdiction. *See State ex rel. Peterson v. Olson*, 307 N.W.2d 528 (N.D.1981).

■ The petitioners contend that this case, like *State ex rel. Sanstead v. Freed*, 251 N.W.2d 898 (N.D.1977), requires constitutional interpretation and is therefore appropriate for judicial review. The issue, petitioners argue, is whether the state constitution requires that HB No. 1346 be approved by two-thirds of the members of each house. We, however, conclude that the constitutional issue is not the dispositive issue in this case and is not ripe for adjudication at this time.[1] The key issue on the merits, requiring resolution were we to exercise original jurisdiction, is whether or not the President or President Pro Tempore of the Senate may, under that legislative body's procedural rules, refuse to accept a bill which has been sent to that body from the House for consideration.

In *Sanstead* the Lieutenant Governor requested this court to exercise its original jurisdiction to enjoin the Senate from conducting its proceedings under rules which allegedly violated his constitutional right to cast the deciding vote in the Senate on the final passage of a bill. We exercised our original jurisdiction and granted the writ to the extent required to prevent the Senate

---

**1.** Until a party aggrieved by the application of a statute raises the issue of its constitutionality in an actual litigated controversy, a determination of the constitutional question would constitute the rendering of an advisory opinion. *Boedecker v. St. Alexius Hospital*, 298 N.W.2d 372 (N.D. 1980). It is well settled that courts cannot give advisory opinions. *Peoples State Bank v. State Bank of Towner*, 258 N.W.2d 144 (N.D.1977); *Langer v. State*, 69 N.D. 129, 284 N.W. 238 (1939).

from operating under an unconstitutional rule. In discussing the jurisdictional issue in *Sanstead,* we rejected the argument that our assumption of jurisdiction would create a confrontation between equal branches of state government:

"It is the responsibility of this Court to act as the ultimate interpreter of the Constitution of the State of North Dakota.

\*      \*      \*      \*      \*      \*

"Our consideration of State Senate Rules 26 and 55 requires only that the Constitution of the State of North Dakota be interpreted, in the instant case. This determination falls squarely within the traditional role accorded this Court." (251 N.W.2d at 903–904.)

We believe the circumstances in *Sanstead,* under which we determined it was appropriate to exercise original jurisdiction, are clearly distinguishable from the circumstances in this case. In *Sanstead* this court was requested to interpret the constitution to determine if the Senate was operating under unconstitutional rules of procedure. In this case there is no allegation that the respondents are operating under unconstitutional rules. Unlike the dispositive issue in *Sanstead* requiring constitutional interpretation, the dispositive issue in this case merely concerns the interpretation and application of the legislature's procedural rules. In *Sanstead* there was conflict, with constitutional ramifications, between the executive and the legislative branches of government. In this case the conflict is a procedural intra-branch dispute among members of the legislature.

■ The legislative, executive, and judicial branches are coequal branches of government, and each branch is supreme in its own sphere. Art. XI, § 26, N.D. Const.; *State ex rel. Mason v. Baker,* 69 N.D. 488, 288 N.W. 202 (1939). This court has long recognized that the creation of the three branches of government by our constitution operates as an apportionment of the different classes of power whereby there is an implied exclusion of each branch from the exercise of the functions of the others.

*Ranta v. McCarney,* 391 N.W.2d 161 (N.D. 1986); *City of Carrington v. Foster County,* 166 N.W.2d 377 (N.D.1969); *Kermott v. Bagley,* 19 N.D. 345, 124 N.W. 397 (1910). In recognition of these abiding principles, the judiciary exercises great restraint when requested to intervene in matters entrusted to the other branches of government.

■ Article IV, Sec. 12 of the North Dakota Constitution authorizes each house of the legislative assembly to establish its procedural rules. The Senate's construction of its own rules applicable to the law-making process is a legislative function. Such legislative action which does not exceed constitutional authority is open only to political challenge. *Cf. Baker v. Carr,* 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962); *see also* Henkin *"Is There a 'Political Question' Doctrine?"* 85 Yale L.J. 597 (1976). Senator Redlin's interpretation of the Senate's procedural rules and the subsequent refusal of the Senate members to overrule his determination are internal matters capable of resolution by the legislative branch, which has various nonjudicial remedies available to it within the political forum. *See, e.g., Mason's Manual of Legislature Procedure,* §§ 230, 576.

■ This court ordinarily will not issue its prerogative writs in order to bring about that which voluntary political action can perform. *State ex rel. McArthur v. McLean,* 35 N.D. 203, 159 N.W. 847 (1916). We therefore deem the instant case an inappropriate one in which to exercise our original jurisdiction.

The application is denied.

VANDE WALLE, MESCHKE and GIERKE, JJ., concur.

ERICKSTAD, Chief Justice, concurring specially.

Lest the members of the House of Representatives be caused to believe that we may have somewhat cavalierly or indifferently declined to exercise original jurisdiction in this case to resolve the dispute between the House and Senate, and think that we have ignored precedent in doing so,

I feel compelled to speak briefly on this subject.

Another reason for further explanation is that I am the only Justice remaining on the Court who participated on the side of the majority of this Court in *State ex rel. Sanstead v. Freed*, 251 N.W.2d 898 (N.D. 1977), wherein we accepted original jurisdiction and acted to resolve a dispute between the Lieutenant Governor in his capacity as presiding officer of the Senate, and a majority of the membership of the Senate over the Lieutenant Governor's authority to break a tie vote on second reading and final passage of a bill.

I do this fully realizing that precedent is recognized as a stabilizing element in our system of jurisprudence and that, as it contributes to predictability, it should not be abandoned without careful study nor should its meaning be curtailed by finding distinguishing features which have little real meaning. This does not mean, however, that once a decision has been made upon an issue of law that it should never be reconsidered. As we said in *Lembke v. Unke*, 171 N.W.2d 837 at 841 (N.D.1969), "we do not see our function as limited to deciding today's controversies in light only of yesterday's opinions." If such were the case then all we would need is a good computer and a competent operator once the computer was properly programmed and the data supplied.

In her inimitable way, Justice Levine, speaking for this Court, has explained why it was appropriate for this Court to assume jurisdiction in *Sanstead* and not in this case. I shall attempt to complement her efforts in a small way.

In *Sanstead*, Justice Paulson, speaking for the majority of this Court, in finding it appropriate to assume jurisdiction to decide the dispute between Lieutenant Governor Sanstead and the majority of the membership of the Senate, said:

"We make such finding based on the following factors: (1) the Lieutenant Governor openly declared his intent to cast a tie-breaking vote if the members of the State Senate are equally divided on the final consideration on a bill; (2) members of the State Senate have openly declared an intent to challenge any attempt by the Lieutenant Governor to vote on the final consideration on a bill; (3) the 45th Legislative Assembly is currently in session; (4) *the legal status of any bill passed by the State Senate with a tie-breaking vote cast by the Lieutenant Governor would be in doubt;* and (5) it is in the best interests of the State of North Dakota that a direct confrontation between the Lieutenant Governor and the State Senate be avoided, so as to assure an orderly law-making process during the term of the 45th Legislative Assembly." 251 N.W.2d at 903. [Emphasis added.]

Factor number four, which impressed me the most in *Sanstead*, is non-existent in this case. House Bill 1346 passed the House with a majority vote, but it was rejected by the presiding officer of the Senate, Senator Redlin, acting as President Pro Tempore, and his action has now been sustained by a majority vote of the Senate. It was rejected for the reasons set forth in Justice Levine's opinion because the bill did not pass the House of Representatives by a two-thirds vote. As a result, there will be no law in existence arising from the rejection of House Bill 1346 over which there could be any doubt or which could produce any problems. The Senate has, in effect, killed the bill by this procedure, and it is as dead as though it had been considered on its merits after normal first reading, referral to committee, report to the Senate, and vote for indefinite postponement on the report to the Senate. Some people, including the House members, may have preferred that the Senate would have considered the merits of the bill and discussed it openly in committee and on the floor of the Senate, and some people may attempt to hold the Senate accountable for not having done so, but such is the legislative process and the nature of our political system.

Accordingly, I see no crisis which would justify our intervention in this case, but I

say this reserving the right to decide in another case, under different circumstances, that it may be imperative, as we found it to be in *Sanstead,* to accept jurisdiction.

Notwithstanding that we might have resolved the problem between the House and Senate in this case had we intervened, I think that the precedent would be such that henceforth we would be expected to act as an arbiter in the settlement of disputes as they arise between the House and Senate which would leave us little time to perform the constitutional duties which constantly press heavily upon us. This is more appropriately the function of the Attorney General in his opinion-rendering capacity. What I advocate here is a common sense basis for declining to accept jurisdiction which is in addition to the reason Justice Levine so succinctly yet graphically articulates in her opinion which relates to the restraint the judiciary must exercise when requested to intervene in matters entrusted to another of the three co-equal branches of government. With this additional practical reason, I join Justice Levine and my colleagues in her conclusion that this is not an appropriate case for us to exercise our original jurisdiction.